**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL J. ZACCARIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 25-01558 |
| | ) | Judge Nora Barry Fischer |
| FRANK BISIGNANO, | ) | Docket No. 7 |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

## I.  INTRODUCTION

Michael J. Zaccaria  ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

seeking review of the final determination of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying his application for disability insurance benefits ("DIB") under Title

II and § 1614(a)(3)(A) of the Social Security Act (the "Act"). (Docket No. 1; Docket No. 8 at 1).

Now pending before the Court is Plaintiff's Motion for Summary Judgment, which has been fully

briefed.  (Docket Nos. 7-9).

## II.  PROCEDURAL HISTORY

On April 4, 2023, Plaintiff filed an application for the aforesaid social security benefits,

alleging disability as of September 28, 2022.  *See* Administrative Transcript, Docket No. 3

(hereafter "Tr."); *id.* at 221.[1]  His application being denied by the Social Security Administration

---

[1] A certified copy of the transcript of the complete administrative proceedings was made of record at Docket No. 3 as follows: 3-1 Court Transcript Index; 3-2 pp. 1-78; 3-3 pp. 79-98; 3-4 pp. 99-220; 3-5 pp. 221-44; 3-6 pp. 245-358; and 3-7 pp. 359-588.

(the "SSA") at the July 25, 2023 initial and the February 2, 2024 reconsideration levels of review, it then proceeded to an online video hearing before Administrative Law Judge ("ALJ") Sarah Ehasz on August 14, 2024.  During that hearing Plaintiff, represented by his present counsel, and a vocational expert, Barry Hensley, testified.  On December 18, 2024, ALJ Ehasz issued a Decision finding that Plaintiff had not established disability under the Act during the relevant period (September 28, 2022 through the date of her decision) and denying his application. (Tr. at 24-39). The Appeals Council thereafter denied Plaintiff's request for review, rendering the ALJ's Decision final pursuant to 20 C.F.R. § 404.981.  Plaintiff filed suit in this Court on October 8, 2025.  (Docket No. 8 at 1-2; Docket No. 9 at 2; Tr. at 1-7, 20-38, 111, 126, 221).

The issues at hand are whether (a) the correct legal standards were employed, and (b) substantial evidence exists in the record to support the ALJ's Decision.  On deferential review and as more fully set forth below, the Court finds that the administrative record sufficiently supports the ALJ's Decision, and that the proceedings and determinations complied with the applicable standards.  Plaintiff's Motion for Summary Judgment [7] is accordingly denied and judgment granted in favor of the SSA/Commissioner.

## III.    FACTUAL HISTORY

Plaintiff was 45 years old on the date of his alleged onset of qualifying disability, completed his GED, previously worked as an automobile body technician, and has a history of generalized epilepsy since age 18. (Docket No. 8 at 2).  The further relevant factual history, as set forth in the Administrative Transcript and highlighted in Plaintiff's Brief in Support (Docket No. 8, providing citations to Transcript), includes the following:

Plaintiff began to suffer new symptoms, including cognitive and short-term memory decline, weakness/dizziness, and staring spells multiple times a week (occurring at home, but

unrecalled and/or unverifiable/unwitnessed as to work)[2] which were reported to his neurologist,

Dr. May Flores, of Excela Health Neurology, in September 2022.  His driving license was

restricted by Dr. Flores, and he was seen in follow-up in December 2022 at which time he was

restricted from employment for six months pending the completion of diagnostic testing. (Doc.

No 8 at 2-3).

That same month, Plaintiff completed a three to four day inpatient evaluation at UPMC

Shadyside Hospital's Epilepsy Monitoring Unit that showed results consistent with generalized

epilepsy, and he was "[c]onsequently  . . . discharged with instructions to continue his anti-

seizure medication" and pursue additional neuropsychological evaluation.  At follow-up in

February 2023, he reported becoming shaky, twitchy, absent-minded and forgetful, and

struggling to maintain focus in 2022, when he was still working.  He also displayed/expressed

anxiety attributed to the stress of his seizures.  During a consultative psychiatric examination with

Dr. Sarah Vanes approximately five (5) months later (July 2023), Plaintiff said he felt unable to

work due to ongoing seizures and reported related feelings of anxiety/restlessness as well as

short-term memory loss.  He was diagnosed with unspecified anxiety disorder and epilepsy; with

moderate impairments in understanding, remembering, cognition as to complex

instructions/decisions; and with appropriate response to routine workplace changes.  In follow-up

with his neurology practice group that autumn (October 2023), he reported continued staring

spells, cognitive deficiencies in focus and memory, and recounted almost daily jerks and

twitches.  It was recommended he continue to refrain from driving or employment. (*Id.* at 2-4).

---

[2] *But cf.* Docket No. 8 at 8 (noting Plaintiff's hearing testimony that although he worked primarily alone, "his supervisor made sporadic appearances and had been aware of his ongoing problems for a few years" and "[t]oward the end of his employment, a helper was hired to assist him").

On January 19, 2024, Plaintiff was seen in consultative psychiatry examination by Dr. Andrea Perry and reported insomnia, depressive symptomology, difficulty with focus and concentration.  He was found to have mild impairment in attention, concentration and both recent/remote memory (attributed to anxiety during evaluation and emotional distress secondary to depression).  He also exhibited low frustration tolerance.  One week later, on January 25, 2024, in consultative internal medicine examination with Nurse Practitioner Melissa Walls, Plaintiff reported having seizures multiple times a day, often in attempting focus, and memory problems. He demonstrated unsteady tandem walk, moderate difficulty walking heel-toe and reduced (50%) squatting ability.  He was assessed as limited to standing up to two hours at a time for a total of up to four hours per day, and restricted from unprotected heights/moving mechanical parts and motor vehicle operation. (*Id.* at 4-5).

During the remainder of 2024, Plaintiff had these follow-up appointments with his neurology provider, Excela:

On February 12, Dr. Flores noted amnesia with a question of dementia, cardiac arrhythmia, fatigue, GERD, low back pain and an absence of seizures; but on June 10, she noted that Plaintiff reported seizures on January 8, March 4 and April 16, lasting two-three minutes with limb shaking, incontinence, time-loss and a post-ictal state the following day.  At that time, he also reported struggling to remember conversations.  Approximately two weeks later, on June 28, he was seen by Excela Physician Assistant David Regalla, who diagnosed generalized epilepsy and memory loss/impairment, with convulsive and non-convulsive refractory seizures, resulting in loss of consciousness, with associated reported symptoms of aura, tongue biting, incontinence, and occasional feelings of déjà vu and anxiety.  Plaintiff also reported extreme limitations in multiple functional areas during seizures.  PA Regalla thus determined Plaintiff

4

would need to take unscheduled/unpredictable breaks during a work day and be absent about three days per month.

Finally, on August 8, Plaintiff was again seen by Dr. Flores, whose diagnoses were the same as PA Regella's: generalized epilepsy, memory loss and cognitive impairment with convulsive and non-convulsive refractory seizures, resulting in loss of consciousness, including similar associated reported symptoms and staring spells.  Dr. Flores further noted Plaintiff's daily focal seizures, grand mal seizures typically once every 1-2 months, and that despite treatment/medication, he had been experiencing frequent seizures for at least three months and could not always take safety precautions.  Dr. Flores opined that Plaintiff could not tolerate even "low stress" at work as it precipitated his seizures and that, although he was compliant, seizure medication also caused Plaintiff side effects, such as difficulty with memory and concentration, irritability, dizziness, and drowsiness. Plaintiff also reported impairments of handling conflict, focus/attention/completion, sequencing, recall, problem solving and sustaining routine, as well seizure-related difficulties with depression, anxiety, irritability, social isolation and poor self-esteem.  Dr. Flores reiterated the workplace restrictions of unscheduled/unpredictable breaks and approximately three days absence per month previously recorded by PA Regella.  (*Id.* at 6-7).

## IV.    STANDARD OF REVIEW

To be eligible for Social Security benefits under the Act, a claimant must demonstrate that he cannot engage in "substantial gainful activity" because of a medically determinable (physical or mental) impairment (an "MDI") which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).  When reviewing a claim, the ALJ must utilize a five-step sequential analysis to evaluate whether a claimant has met the requirements for

5

disability.  20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R., Pt. 404, Subpt. P, App'x 1; (4) whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003).  If the claimant is determined to be unable to resume previous employment, the burden shifts to the SSA/Commissioner at step 5 to prove that, given claimant's mental or physical limitations, age, education, and work experience, he is able to perform substantial gainful activity in jobs available in the national economy.  *See e.g., Edwards v. Berryhill*, No. CV 16-475, 2017 WL 1344436, at *1 (W.D. Pa. Apr. 12, 2017); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986).  *See also* Tr. 18-20.

The Court's review of the agency's final decision is plenary for questions of law. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  It reviews the ALJ's findings of fact for "substantial evidence" and reviews the administrative record as a whole.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (quoting 42 U.S.C. § 405(g));[3] *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002); *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).  This evidentiary threshold is not high, and "substantial evidence" means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek,* 139 S. Ct. at 1154; *Ventura v. Shalala*,

---

[3] Section 405(g) provides in pertinent part:

> Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business.

55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  If the ALJ's decision is supported by such evidence, it is conclusive.[4]  The Court may not "set aside" the decision "even if this Court 'would have decided the factual inquiry differently.'"  *Hansford v. Astrue*, 805 F. Supp. 2d 140, 143 (W.D. Pa. 2011) (quoting *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).[5]

## V.   ANALYSIS

The 17-page Decision rendered by ALJ Ehasz found that Plaintiff (1) did not engage in substantial gainful activity during the relevant period of September 28, 2022 through December 18, 2024; (2) had the severe impairment of epilepsy;[6] (3) did not have an impairment or

---

[4] As the Supreme Court has explained, however, the ALJ must provide a satisfactorily clear articulation of the basis for her conclusions:

> An agency action qualifies as "arbitrary" or "capricious" if it is not "reasonable and reasonably explained."  *FCC v. Prometheus Radio Project*, 592 U. S. 414, 423, 141 S. Ct. 1150, 209 L. Ed. 2d 287 (2021).  In reviewing an agency's action under that standard, a court may not "'substitute its judgment for that of the Agency.'"  *FCC v. Fox Television Stations, Inc.*, 556 U. S. 502, 513, 129 S. Ct. 1800, 173 L. Ed. 2d 738 (2009).  But it must ensure, among other things, that the agency has offered "a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made."  *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L. Ed. 2d 443 (1983).

*Ohio v. EPA*, Nos. 23A349, 23A350, 23A351, 23A384, 2024 U.S. LEXIS 2846, at *18 (June 27, 2024); *see also Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981).

[5] As the Supreme Court reiterated in *Ohio v. EPA, supra*, when considering a case, a district court can neither conduct a *de novo* review of the decision nor re-weigh the evidence of record.  It must judge, under the applicable standard, the propriety of the decision in reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196–97 (1947).

[6] The ALJ further found - on review and consideration of all the medical evidence in Plaintiff's file - that he has (1) the "non-severe physical impairments of carpal tunnel syndrome of left wrist, acromioclavicular sprain, and acute COVID-19", which are relatively stable and treated with routine, conservative medical management and monitoring; and (2) as to mental health, the medically determinable impairments ("MDI") of "anxiety, depression, and mild cognitive disorder and memory change, [which] considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe."  In making the latter finding, the ALJ considered the four broad functional areas known as the "paragraph B" criteria in detail and concluded that – on the totality of the record, including his consultative examinations and neurological findings - Plaintiff has mild limitation/impairment in each (*i.e.*, in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself).  (Tr. at 27-28) (providing citations to record); *id.* (including in this analysis, *e.g.*, consultative findings of mildly impaired recent and remote memory skills, average cognitive functioning, good insight, good judgment, intact orientation and

combination of impairments meeting or equaling the severity of one of the criteria listed;[7] (4) had

the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b)

except the further restrictions of no ladders, ropes, or scaffolds; occasional ramps and stairs,

balancing, crouching, and crawling; frequent stooping and kneeling; no work at unprotected heights

or around dangerous machinery; no operation of a motor vehicle; frequent concentrated exposure

to weather, humidity and wetness, dust, odors, fumes and pulmonary irritants; no exposure to

extreme cold and heat; detailed but not complex tasks and decision making; frequent interaction

with supervisors; and occasional interaction with coworkers and the public" - a determination

which precluded performance of his past relevant work.[8]   ALJ Ehasz then found, at step 5, that

---

mildly impaired attention and concentration; neurology findings of intact recent and remote memory, and ability to follow simple and complex commands indicating intact concentration).

[7] The ALJ concluded that Plaintiff's epilepsy does not meet or medically equal Listing 11.02, as she found the record did not persuasively support (1) tonic-clonic seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment or (2) dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment.  (Tr. at 29).

[8] *See* Tr. at 29-34 (ALJ Ehasz's detailed explanation of the process and bases of her findings at step (4)).  More particularly, the ALJ noted Plaintiff's claim for disability benefits "due to generalized tonic-clonic epilepsy, refractory epilepsy, generalized anxiety, and memory change", and symptoms including inability to concentrate or focus, jerking of arms, and seizures.  ALJ Ehasz then identified the underlying MDIs as ones that could be both (a) "shown by medically acceptable clinical or laboratory diagnostic techniques" and (b) "reasonably expected to produce the claimant's pain or other symptoms." In so doing, she considered both (a) Plaintiff's symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p, and (b) the medical opinion(s) and prior administrative medical finding(s), in accordance with the requirements of 20 CFR 404.1520c and 416.920c.  She also considered, in completing her RFC assessment, the extent to which the "intensity, persistence, and limiting effects" of Plaintiff's symptoms of those MDIs impacted his work-related activities and the extent to which Plaintiff's own statements about those effects were substantiated by objective medical or other evidence of record. (*Id.* at 29-30).

ALJ Ehasz found that the evidence of record did not fully support Plaintiff's allegations of either (1) the frequency and severity of his seizure events, or (2) significant memory loss and cognitive debilitation.  (Tr. at 30-32) (citing findings of record, including those reflecting a history of infrequent generalized seizures "every couple of years precipitated by missed doses of medication"; activities of daily living that include self-care, laundry, shopping, cleaning, and basic household tasks; harmonious social interaction, cooperative behavior, adequate manner of relating and social skills, neutral mood and full affect; and cognitive/memory functioning records of intact orientation, mildly impaired attention and concentration, mildly impaired recent and remote memory skills, average cognitive functioning, good insight, and good judgement." (*Id.* at 31-32).  In considering medical opinion(s) and prior administrative medical finding(s), the ALJ noted the persuasiveness as to mild mental limitations– on the basis of support and consistency with, *i.e.*, the evidence of daily activities – of the initial July 2023 findings of the State agency psychologist, Dr. Thomas Fink, and July 2024 findings on review of the State agency psychiatrist, Faisal Roberts; as well as the opinion given by

Plaintiff retained the capacity to perform other work existing in the national economy.[9]  Plaintiff's

claim was therefore denied at step (5).  *See generally* Tr. at 24-47.

While not unsympathetic to Plaintiff's health history, the Court must, under the applicable

standard, reject Plaintiff's contentions of error and affirm the ALJ's Decision.  It does so on the

---

consultative examiner, Dr. Andrea Parry, in the context of her examination findings and the neurology reports of record.

The ALJ also discussed the records provided by consultative examiner Dr. Sarah Vanes and Plaintiff's treating neurologist group (Pa Regella and Dr. Flores), placing them in context with the medical assessments/evidence underlying each opinion, as well as with other evidence of Plaintiff's health and functionality during the relevant period as a whole.  The ALJ noted, *e.g.*, tensions between Dr. Vanes' own examination findings (and other record evidence) and opinion.  She also noted the lack of medical evidence or other support for additional symptoms and more severe impairments attributed by PA Regella, and the conflicting aspects of neurology examination reports, *e.g.*:

> The record does not support frequent absences from work. There is no medical evidence to support extreme functional limitations or the claimant's allegations of post postictal phenomena. Neurology physical examination disclosed; alert and oriented to person, place, and time; memory intact to recent and remote events; able to follow simple and complex commands indicating intact concentration; clear speech with no aphasia or dysarthria; no cranial nerve abnormalities; normal bulk and tone; 5/5 neck flexion and extension; 5/5 upper and lower extremity strength; intact sensation. (Exhibit 12F/3). A neurologic evaluation on June 10, 2024 states no seizure activity since April and the claimant denies limb jerking, tongue biting, incontinence, staring off, or losing track of time.

And finally, the ALJ noted, in finding Dr. Flores' opinion unpersuasive while noting its consistency with that of the practice group's PA, that:

> Dr. Flores also opines that the average frequency of seizures included daily focal seizures and grand mal seizures one time per month or every other month. This is not consistent with neurology examinations administered by Dr. Flores. On June 10, 2024, Dr. Flores reported that the claimant first developed tonic-clonic seizures at age 18, and he usually has a seizure every 2 – 3 years provoked by missed doses of medication. The claimant reported no new seizures since April. The claimant denied limb jerking, tongue biting, incontinence, staring off, or losing track of time.  Dr. Flores opines that the claimant has medication side effects; however, her neurology treatment records do not reveal side effects. She opines that the claimant has marked difficulty with depression, anxiety, social isolation, poor self-esteem, handling conflict, completing tasks, short attention span, sequencing multi-step activities, irritability, remembering instructions, identifying and solving problems, and sustaining a routine. Dr. Flores' treatment records do not identify these difficulties. A neurology examination reports alert and oriented to person, place, and time; memory intact to recent and remote events; able to follow simple and complex commands indicating intact concentration; clear speech with no aphasia or dysarthria.

On the basis of this review, ALJ Ehasz noted that the RFC "must represent the most, not the least, work-related activities that [claimants] are capable of doing on a regular and continuing basis" and concluded that the record supported the lesser limitations which she then reflected in the RFC.  (*Id.* at 32-34) (providing citations to record evidence).

[9] *See* Tr. at 34-35.

basis of (a) its review and above explication of the Decision challenged, and (b) largely in agreement with the citations to substantial evidence in the Administrative Record and summation of the ALJ's findings presented by Defendant.  (Docket No. 9).[10]  In further response to Plaintiff's averments of error, the Court observes that:

(1) Plaintiff objects that the ALJ erred in failing to account for the totality of his symptoms in her RFC, in particular his (a) refractory generalized epilepsy/non-convulsive symptoms and (b) severe cognitive/memory defects. (Docket No. 8 at 14-15).  As detailed in Section III and the Decision, however, notwithstanding Plaintiff's documented but subjective reporting and hearing testimony that he was experiencing more frequent, severe and diverse symptomology/impairment, the ALJ found those claims to lack persuasive support in the Administrative Record.

Plaintiff's subjective complaints alone cannot establish disability; rather, the regulations' two-step process requires: first, (a) objective clinical signs and laboratory findings demonstrating the existence of an MDI that (b) could reasonably be expected to produce the alleged symptoms, and then second, as to that MDI, the extent to which the claimant's statements of work-related impairment are medically supported. *See supra* n. 8*; 20 C.F.R. §§ 404.1529(a, b), 416.929(a, b).* Here, the ALJ appropriately considered the medical records presented and concluded – in accordance with the regulatory guidelines -  that Plaintiff's subjective statements concerning the "intensity, persistence and limiting effects" of symptoms were "not entirely consistent with the medical evidence and other evidence" of record as explained therein;[11] and (2) incorporated related

---

[10] *Id.* at 1 (averring that the ALJ "reasonably determined that Plaintiff had the residual functional capacity (RFC) to perform a range of light work with postural, environmental, and mental limitations, including limitations to detailed but not complex tasks and decision making, frequent interaction with supervisors, and occasional interaction with coworkers and the public" and that "[s]ubstantial evidence supports the ALJ's fact-finding, including routine observations of Plaintiff maintaining intact attention, concentration, and memory throughout the period at issue and the prior administrative medical findings that found Plaintiff capable of medium work without mental limitations"). *See also id.* at 2-4.

[11] Tr. at 30.

functional limitations, accommodative to the medically supported work-related impairments thus assessed, in the RFC assessment. *See supra* (summarizing Decision analysis and findings). *See also* Docket No. 9 at 7-8 (noting where and how Decision addressed Plaintiff's "subjective allegations including difficulty with memory and understanding, difficulty completing tasks and following instructions, difficulty handing stress and changes in routine, an inability to concentrate, an inability to focus, jerking of arms, and seizures" by citations to record showing "no serious deficits in long-term memory, short-term memory, concentration, insight, or judgment" and Plaintiff's denial during treatment of "seizure symptoms such as limb jerking, tongue biting, incontinence, staring off, or losing tract of time") (citing Tr. at 421, 477, 508, 558, 566, 574).

As referenced above, the assessment of an MDI and the substantiation of Plaintiff's statements regarding attributed symptoms are delegated to the ALJ, subject to the Court's deferential review. *See* Section IV, *supra*; Tr. at 29-31. *See also Hur v. Barnhart*, 94 Fed. Appx. 130, 133 (3d Cir. 2004) (noting that there is no requirement that an ALJ discuss every piece of evidence in the record so long as her decision, read as a whole, illustrates that she considered the appropriate factors and her determination was supported by substantial evidence in the record) (citing *Fargnoli v. Massanari,* 247 F.3d 34, 42 (3d Cir. 2001)); discussion *infra* at 12-13 & n. 15.

Finally, ALJ Ehasz determined that Plaintiff retained the RFC to perform a range of light work with additional postural, environmental and mental limitations; and found that Plaintiff provided no persuasive medical opinion indicating that either Plaintiff's averred (a) refractory/episodic symptoms or (b) cognitive/memory impairments warranted greater limitations. (Docket No. 9 at 1, 8). The RFC need only include "credibly established" limitations. *See* Docket No. 9 at 8; *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) ("where a limitation is supported by medical evidence, but is opposed by

other evidence in the record, the ALJ has discretion to choose whether to include that limitation" in the RFC). [12]

(2) Plaintiff next objects that the ALJ improperly "cherry picked" the record, disregarding (a) the consistent opinions of his treating neurology group providers, Dr. Flores and PA Regella, and (b) objective test results. (Docket No. 8 at 15-18). Although Plaintiff objects to ALJ Ehasz's asserted failure to sufficiently/properly consider his providers' records, the Decision reflects their detailed consideration – in context encompassing their "consistency" and "supportability", and with substantial reference to the record - in the course of ALJ Ehasz's determination of Plaintiff's RFC and qualification for benefits. *See supra* at 7-9, nn. 6-9; Tr. at 29-34. *Cf., e.g., Zaborowski v. Comm'r of Soc. Sec.*, 115 F. 4th 637, 639 (3d Cir. 2024) (ALJ sufficiently supported her findings by "weav[ing] supportability and consistency through her analysis"). [13]

Moreover, under the updated medical evidence regulations (applicable to claims filed after March 27, 2017), an ALJ considers the persuasiveness of the opinions and prior administrative medical findings instead of assigning them weight, as was required under the previous regulations.

---

[12] Similarly, the ALJ is required to submit to the impartial vocational expert only those functional limitations that she finds credibly established by the record. See, e.g., *Hammond v. O'Malley*, 735 F.Supp.3d 567, 579 (E.D. Pa. 2024) (ALJ is not required to submit to vocational expert every impairment alleged by claimant, but must accurately convey all of claimant's credibly established limitations); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).

[13] *See also* Tr. at 419, 421 (Dr. Flores' September 2022 notes that Plaintiff experienced a seizure once every two to three years if he missed medication doses, reported his last seizure as two to three years prior, and was observed to be alert and oriented with intact recent and remote memory, and able to follow simple and complex commands); Tr. at 365, 370 (Epilepsy Monitoring Unit December 2022 admission showing no capture of seizures, noting no convulsive events in prior two years, and observing normal communication, orientation, attention, language, recent and remote memory, and fund of knowledge). *See also* Docket No. 9 at 11-12 (further detailing the Decision's discussion of its consideration of the evidence in evaluating the support and consistency factors with regard to the opinions from Dr. Flores and PA Regella). *Cf. McCloskey v. Berryhill*, 2018 WL 6831960 (E.D. Pa. Dec. 28, 2018) (affirming denial of benefits where ALJ properly considered claim based on epilepsy and anxiety, found claimant had less severe symptomology and functional limitation than alleged, and findings were based on substantial evidence – including that of less frequent seizures and epilepsy responsive to consistent medication - despite existence of other evidence – including physician's – supporting a different decision); *Facyson v. Banhart*, 94 F. App'x 110, 111 (3d Cir. 2004).

20 C.F.R. §§ 404.1520c(a), 416.920c(a).[14]  Under the revised regulations, an ALJ cannot defer or give any specific evidentiary weight to a medical opinion (or prior administrative medical finding); rather, she assesses how persuasive the opinion or finding is by considering non-exclusive factors (supportability, consistency, relationship with the claimant, specialization, and a catch-all "other" that includes, *e.g.*, familiarity with other evidence in the claims folder and with the disability program).  The most important factors are supportability and consistency; the ALJ explains how she considered these, but generally need not discuss other factors.  20 C.F.R. § 404.1520c(a) and (b).  More generally, and as noted *supra*, the Court reviews the ALJ's findings of fact for "substantial evidence" and reviews the administrative record as a whole.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).[15]

(3) Lastly, Plaintiff raises additional objections - *i.e.*, that ALJ Ehasz failed to (a) consider the extent to which Plaintiff's (subjectively reported) frequency and severity of symptoms precluded work (*e.g.*, by number of expected/required medical absences and "off task" limitations), (b) give heightened weight to his subjective pain supported by competent evidence or heightened credibility to his subjective complaints given his strong and consistent work history,[16] or (c) correctly present his limitations to a vocational expert.  *See* Docket No. 8 at 18-20.  Each relies, however, largely on the same assertions of error made in Plaintiff's prior two objections.  As explicated in the preceding text and footnotes, each of these additional objections is more than

---

[14] *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)).  *See also* Docket No. 9 at 8-9.

[15] The new regulations were designed to be consistent with a "reasonable articulation standard" that does not require written analysis about how the adjudicator considered each piece of evidence.  *See* 82 Fed. Reg. 5844-01, at 5858.  The decision should allow a reviewing court "to trace the path of the adjudicator's reasoning." *Id.; see also Alaska Dep't of Envt'l Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004); Section IV, *supra*.

[16] Docket No. 8 at 20 (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979)).  *Compare supra* at 12-13, nn. 14-15.

adequately addressed above and in Defendant's Brief in Opposition. *See generally,* discussion of Plaintiff's subjective complaints, Administrative Record and Decision, *supra*; Docket No. 9 at 12-13. *Cf. Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision.").

## VI.   CONCLUSION

In sum, the Court has applied the applicable standard and finds that the ALJ's Decision (a) properly included, considered and referenced the evidence relating to Plaintiff's subjective reporting, symptoms, medical conditions, and limitations during the relevant period, (b) sufficiently explained the ALJ's reasonings and findings to permit the Court's meaningful review, (c) included related reasonably demonstrated limitations during the period at issue in its RFC, and (d) based its denial of benefits on substantial evidence found and reasonable determinations made. *See* Sections IV and V, *supra*.  Plaintiff's Motion for Summary Judgment [7] is therefore denied and the decision of the SSA/Commissioner is affirmed.  An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  March 31, 2026
 cc/ecf:  All counsel of record.